**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STUART FORCE, *et al.*,<br><br>                      *Plaintiffs*,<br><br>  v.<br><br>REPUBLIC OF SUDAN,<br>Ministry of Foreign Affairs<br>Republican People's Palace<br>Khartoum, Sudan<br><br>                      *Defendant*. | Case No. 20-cv-03027 (RDM) |

**STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THE REPUBLIC OF THE SUDAN'S**
**<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

**WHITE & CASE LLP**

Christopher M. Curran (D.C. Bar No. 408561)
Nicole Erb (D.C. Bar No. 466620)
Claire A. DeLelle (D.C. Bar No. 974945)
Celia A. McLaughlin (D.C. Bar No. 1007891)
701 Thirteenth Street, N.W.
Washington, D.C., 20005-3807
(202) 626-3600
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................5

I. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS ACTION ...........................................................................................................................5

II. THE COURT LACKS PERSONAL JURISDICTION OVER SUDAN ..........................10

III. THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST SUDAN ..............................................................................................................................10

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

* *Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)..................................................................................................5, 10

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017)..........................................................................................................6

*Cicippio-Puleo v. Islamic Republic of Iran*,
353 F.3d 1024 (D.C. Cir. 2004).......................................................................................6

*Clay v. Socialist People's Libyan Arab Jamahiriya*,
614 F. Supp. 2d 21 (D.D.C. 2009)..................................................................................8

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012).........................................................................................9

* *Mark v. Republic of the Sudan*, No. 21-5250,
77 F.4th 892 (D.C. Cir. 2023)..............................................................................5, 7, 8, 9

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
No. 08-5387, 2009 WL 10461206 (D.C. Cir. Feb. 27, 2009).......................................8

*Republic of Austria v. Altmann*,
541 U.S. 677 (2004).........................................................................................................9

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993).........................................................................................................6

* *Verlinden B.V. v. Cent. Bank of Nigeria*,
461 U.S. 480 (1983)...........................................................................................6, 7, 9, 10

### STATUTES

1 U.S.C. § 112a...................................................................................................................1

28 U.S.C. § 1330...............................................................................................................10

28 U.S.C. § 1604.................................................................................................................5

28 U.S.C. § 1605(a)(7)................................................................................................3, 6, 7

* 28 U.S.C. § 1605A................................................................................................ *passim*

28 U.S.C. § 1608 .................................................................................................................10

Antiterrorism and Effective Death Penalty Act of 1996,
    Pub. L. No. 104-132, 110 Stat. 1214 ..........................................................................6

National Defense Authorization Act,
    Pub. L. No. 110-181, 122 Stat. 3 (2008) .....................................................................6

\* Sudan Claims Resolution Act,
    Pub. L. No. 116-260, 124 Stat. 3291 (2020) ....................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(1) ..........................................................................................................9

Fed. R. Civ. P. 12(b)(2) ........................................................................................................10

Fed. R. Civ. P. 12(b)(6) ........................................................................................................10

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 94-1487 (1976) ..............................................................................................6

**OTHER AUTHORITIES**

\* Claims Settlement Agreement Between the Government of the Republic of the
    Sudan and the Government of the United States of America, Oct. 30, 2020,
    T.I.A.S. No. 21-209 (entered into force Feb. 9, 2021) ...................................... *passim*

\* U.S. Sec'y of State, Certification Under Section 1704(a)(2) of the Sudan Claims
    Resolution Act Relating to the Receipt of Funds for Settlement of Claims
    Against Sudan, 86 Fed. Reg. 19,080 (Apr. 12, 2021) ........................................ *passim*

Rescission of Determination Regarding Sudan,
    85 Fed. Reg. 82,565 (Dec. 8, 2020) ........................................................................3, 4

Press Statement, Antony J. Blinken, Secretary of State, Receipt of Funds for
    Resolution of Certain Claims Against Sudan (Mar. 31, 2021),
    https://www.state.gov/receipt-of-funds-for-resolution-of-certain-claims-
    against-sudan/ ..............................................................................................................4

\* Treaties in Force 2021-2023 Supplement, U.S. Dep't of State (Jan. 1, 2023
    https://www.state.gov/wp-content/uploads/2023/06/TIF-Supplement-Report-
    2023.pdf .......................................................................................................................1

\* Indicates authority on which counsel chiefly relies.

The Republic of the Sudan is a sovereign nation in northeastern Africa. Almost three years ago, Sudan and the United States normalized their relations after decades of estrangement and contentiousness. Sudan now respectfully appears in this Court to assert the sovereign immunity that has been restored to it under the Foreign Sovereign Immunities Act ("FSIA").

## PRELIMINARY STATEMENT

On October 30, 2020, following more than a year of bilateral negotiations, Sudan and the United States signed a historic Claims Settlement Agreement as an integral part of a process to normalize relations between the two countries. *See* Claims Settlement Agreement Between the Government of the Republic of the Sudan and the Government of the United States of America, Oct. 30, 2020, T.I.A.S. No. 21-209 (entered into force Feb. 9, 2021) ("Claims Settlement Agreement"); *listed in* Treaties in Force 2021-2023 Supplement at 66, U.S. Dep't of State (Jan. 1, 2023), https://www.state.gov/wp-content/uploads/2023/06/TIF-Supplement-Report-2023.pdf; *see also* 1 U.S.C. § 112a (providing that the publication of a treaty or other international agreement in United States Treaties and Other International Agreements "shall be legal evidence of" such treaty or other international agreement "in all courts of the United States"). This Claims Settlement Agreement, together with the rescission by the United States of Sudan's designation as a state sponsor of terrorism and Congress's enactment of the Sudan Claims Resolution Act, resolved historical terrorism-related claims against Sudan and restored Sudan's sovereign immunities to those normally enjoyed by other foreign states in U.S. courts.

In particular, the Claims Settlement Agreement, upon entry into force, expressly (i) "settles the claims of the United States of America and, through espousal, those of U.S. nationals" against Sudan, (ii) "provides meaningful compensation in connection with claims of foreign nationals employed or performing a contract awarded by the United States," and (iii) "bars and precludes *all* U.S. national and foreign national suits and actions . . . and future suits and actions in the courts

of the United States of America through legislation providing to Sudan the sovereign, diplomatic and official immunities normally provided by the United States to other states." Claims Settlement Agreement arts. II & III (emphasis added). These provisions apply if "such claims, suits, or actions arise from personal injury (whether physical or non-physical, including emotional distress), death, or property loss caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking or detention or other terrorist act, or the provision of material support or resources for such an act, occurring outside of the United States of America and prior to the date of execution of th[e] Agreement." *Id.* art. II. This language tracks the requirements for the "terrorism exception" to foreign sovereign immunity in § 1605A(a) of the FSIA and the private right of action provided in § 1605A(c).

The Claims Settlement Agreement conditioned entry into force upon the enactment of U.S. legislation that (i) "provides the same sovereign, diplomatic, and official immunity to Sudan and its property . . . as is normally provided by the United States to other states and their property," and (ii) "bars and precludes all suits and actions specified in Article II" (i.e., those predicated on § 1605A(a)'s exception to sovereign immunity and § 1605A(c)'s private right of action) that are "pending in the courts of the United States of America . . . and future suits and actions specified in Article II." *Id.* arts. III(1) & V. Therefore, a key effect of the Claims Settlement Agreement, following enactment of implementing U.S. legislation, was the restoration of Sudan's sovereign immunity from jurisdiction and suit in actions brought against Sudan in U.S. courts under § 1605A(a) of the FSIA.

On December 8, 2020, Secretary of State Michael R. Pompeo formally announced the rescission of Sudan's designation as a state sponsor of terrorism. *See* Rescission of Determination Regarding Sudan, 85 Fed. Reg. 82,565 (Dec. 8, 2020). The rescission was effective December 14, 2020. *Id.* Also in December 2020, Congress passed and President Donald J. Trump signed into law the Sudan Claims Resolution Act, the legislation contemplated by the Claims Settlement Agreement. *See* Sudan Claims Resolution Act, Pub. L. No. 116-260, 124 Stat. 3291 (2020) (codified at 28 U.S.C. § 1605A note) ("SCRA"); *see also* Claims Settlement Agreement arts. II & III(1).

Consistent with the Claims Settlement Agreement, § 1704(a) of the SCRA provides for the restoration of Sudan's sovereign immunity in actions brought under § 1605A(a) upon the submission of a Certification by the U.S. Secretary of State to Congress. Section 1704(a)(2) of the SCRA sets forth the required contents of the Certification, which include, among other things, statements that the United States has received payment from Sudan for the settlement of certain historical terrorism-based claims and has formally rescinded Sudan's designation as a state sponsor of terrorism. Section 1704(a)(1) of the SCRA provides that, upon the submission of the Certification, Sudan "shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution under . . . section 1605A" or its predecessor provision, § 1605(a)(7), and that § 1605A(c) "and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Sudan, or any of its agencies, instrumentalities, officials, employees, or agents." SCRA § 1704(a)(1)(A)-(B).

Section 1704(b) of the SCRA establishes that, with one limited exception, the restoration of immunities set forth in § 1704(a) "shall apply to all conduct and any event occurring before the

3

date of the" Secretary of State's Certification.  The one limited exception to the restoration of immunities pertains to claims against Sudan pending at the time of the SCRA's enactment in "the proceedings comprising the multidistrict proceeding 03-MDL-1570 in the United States District Court for the Southern District of New York."  SCRA § 1706(c).  The referenced "multidistrict proceeding" is a multidistrict litigation relating to the terrorist attacks on September 11, 2001.

On March 20, 2021, Secretary of State Antony J. Blinken submitted the requisite Certification to Congress, providing that the United States and Sudan had discharged their obligations under the SCRA.  *See* Certification Under Section 1704(a)(2) of the Sudan Claims Resolution Act Relating to the Receipt of Funds for Settlement of Claims Against Sudan, 86 Fed. Reg. 19,080 (Apr. 12, 2021); *see also* SCRA § 1704(a)(2).  Specifically, as discussed above, on December 8, 2020, Secretary of State Michael R. Pompeo had discharged the obligations of the United States by rescinding Sudan's designation as a state sponsor of terrorism.  *See* Rescission of Determination Regarding Sudan, 85 Fed. Reg. 82,565 (Dec. 8, 2020).  In addition, on March 11, 2021, Sudan had discharged its obligations by completing the transfer of the settlement funds to the United States pursuant to the Claims Settlement Agreement.  *See* Press Statement, Antony J. Blinken, Secretary of State, Receipt of Funds for Resolution of Certain Claims Against Sudan (Mar. 31, 2021), https://www.state.gov/receipt-of-funds-for-resolution-of-certain-claims-against-sudan/.

Accordingly, upon the submission of Secretary of State Blinken's Certification on March 20, 2021, all of the SCRA's prerequisites were met, and Sudan's immunities were restored under § 1704(a)(1) of the SCRA.

In the midst of these historic developments, Plaintiffs filed their initial Complaint against Sudan on October 20, 2020, alleging subject-matter jurisdiction under § 1605A(a) and asserting

claims under the private right of action in § 1605A(c) and under Israeli and U.S. state law. Compl. ¶¶ 2, 56, 268-304, ECF No. 1. Almost two months later, on December 14, 2020, Plaintiffs filed their First Amended Complaint asserting the same basis for subject-matter jurisdiction and claims that they asserted in their initial Complaint. First Am. Compl. ¶¶ 2, 61, 278-314, ECF No. 7. Plaintiffs allege that they are U.S. and Israeli citizens and assert claims based on allegations that Sudan provided material support to Hamas, which is alleged to have carried out terrorist acts in Israel that killed and injured the Plaintiffs. *Id.* ¶¶ 3-61, 81-95. Sudan categorically denies the First Amended Complaint's allegations against it and expresses sympathy to the victims.

## ARGUMENT

As the D.C. Circuit recently held in *Mark v. Republic of the Sudan*, the SCRA and the Secretary of State's Certification thereunder preclude this Court from asserting subject-matter jurisdiction over actions, like this one, brought against Sudan under § 1605A(a)'s exception to sovereign immunity. *See* 77 F.4th 892, 899 (D.C. Cir. 2023) (dismissing § 1605A(a) action against Sudan given restoration of Sudan's sovereign immunity under the SCRA and the Certification thereunder); *see also* SCRA § 1704(a)(1). The SCRA and the Certification also preclude this Court from exercising personal jurisdiction over Sudan and Plaintiffs from asserting any private right of action for their claims against Sudan. The First Amended Complaint therefore must be dismissed with prejudice.

### I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS ACTION

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state" in U.S. courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, a foreign state, its political subdivisions, and its agencies and instrumentalities are presumptively immune from the jurisdiction of U.S. courts unless a plaintiff shows that an exception to sovereign

5

immunity applies.  28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488-89 (1983)); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 180 (2017) (stating the FSIA "starts from a premise of immunity and then creates exceptions to the general principle" (quoting *Verlinden*, 461 U.S. at 493)).  No exception to sovereign immunity applies here.

As originally enacted in 1976, the FSIA did not contain any immunity exceptions related to international terrorism and did not contain any private right of action against any foreign state. H.R. Rep. No. 94-1487, at 12 (1976) (explaining that the FSIA was "not intended to affect the substantive law of liability").  In 1996, Congress amended the FSIA to add a new terrorism exception to immunity under 28 U.S.C. § 1605(a)(7).  *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241.  Section 1605(a)(7) created an exception to sovereign immunity in cases brought by certain victims of terrorism against designated state sponsors of terrorism that engaged in, or provided material support for, four narrowly defined acts of terrorism.  The D.C. Circuit held that § 1605(a)(7) did not provide any private right of action against a foreign state and deemed the FSIA a wholly jurisdictional statute. *See, e.g.*, *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004).

On January 28, 2008, Congress amended the FSIA's terrorism exception through § 1083 of the National Defense Authorization Act.  *See* Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-41 (2008) (codified at 28 U.S.C. § 1605A note) ("2008 NDAA").  Sections 1083(a) & (b) of the 2008 NDAA repealed the former terrorism exception under the FSIA, § 1605(a)(7), and replaced it with a new terrorism exception under a new section, § 1605A.  Like § 1605(a)(7) before it, § 1605A(a) creates an exception to foreign sovereign immunity in cases brought against state sponsors of terrorism in which:

6

> [M]oney damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1). Congress also included in § 1605A(c), for the first time, a private right of action against state sponsors of terrorism for certain enumerated terrorist acts or the provision of material support for such acts.

The First Amended Complaint alleges subject-matter jurisdiction under § 1605A(a) of the FSIA (First Am. Compl. ¶¶ 2, 61), but this exception to foreign sovereign immunity is no longer available against Sudan. Indeed, while Sudan categorically denies the allegations against it, this Court need not reach the merits of such allegations because the Court lacks subject-matter jurisdiction over this action. *See Verlinden*, 461 U.S. at 493-94 ("At the threshold of every action in a District Court against a foreign state, . . . the court must satisfy itself that one of the exceptions [to sovereign immunity] applies . . . ."); *see also Mark*, 77 F.4th at 897 n.3.

As explained above, on December 27, 2020, President Trump signed the SCRA into law, and on March 20, 2021, Secretary of State Blinken submitted to Congress the Certification described in § 1704(a)(2) of the SCRA. The submission of the Secretary's Certification removed § 1605A(a) as a basis for subject-matter jurisdiction over this action. SCRA § 1704(a)(1) (stating explicitly that Sudan "*shall not* be subject to the exceptions to immunity from jurisdiction . . . under section 1605(a)(7) (as such section was in effect on January 27, 2008) or section 1605A . . . " (emphasis added)). This Court, therefore, may not exercise subject-matter jurisdiction in this action pursuant to § 1605A(a), and the First Amended Complaint does not invoke any other exception and no other exception applies.

7

In *Mark*, the D.C. Circuit addressed a very similar action brought against Sudan under § 1605A(a) and affirmed this Court's dismissal of the action. *Mark*, 77 F.4th at 894. The D.C. Circuit concluded that the SCRA "by its plain terms divests this court of jurisdiction," accepting arguments made by Sudan and the United States, which intervened on Sudan's behalf. *Id.* at 896, 897-98; *see also* Brief for Intervenor-Appellee the United States at 18, *Mark v. Republic of the Sudan*, 77 F.4th 892 (D.C. Cir. 2023) (No. 21-5250). This Court also has dismissed actions brought under § 1605A against Libya after the passage of the Libyan Claims Resolution Act — a statute that similarly resolved historical terrorism-based claims against Libya and restored Libya's sovereign immunities — because that act "divest[ed] the court of jurisdiction." *Clay v. Socialist People's Libyan Arab Jamahiriya*, 614 F. Supp. 2d 21, 24-25 (D.D.C. 2009); *see also Pugh v. Socialist People's Libyan Arab Jamahiriya*, No. 08-5387, 2009 WL 10461206, at *1 (D.C. Cir. Feb. 27, 2009) (granting motion to vacate the district court's judgment and dismiss the action with prejudice in light of the Libyan Claims Resolution Act). The same result is mandated here, too.

In addition, the SCRA expressly contemplates that the restoration of Sudan's immunities operates retroactively to apply in cases concerning conduct or alleged terrorist acts that occurred before the submission of the Certification to Congress. Specifically, SCRA § 1704(b) provides that the restoration of immunities and withdrawal of the § 1605A(c) private right of action "shall apply to all conduct and any event occurring before the date of the certification described in subsection (a)(2), regardless of whether, or the extent to which, application of that subsection affects any action filed before, on, or after that date."

Here, the alleged conduct giving rise to Plaintiffs' injuries occurred between 2014 and 2018 (First Am. Compl. ¶¶ 96-277), years before the Certification was submitted to Congress. In the context of foreign sovereign immunity, courts should "absent contraindications, . . . defer to the

8

most recent . . . decision" of the "political branches . . . on whether to take jurisdiction." *Republic of Austria v. Altmann*, 541 U.S. 677, 696 (2004) (quoting *Verlinden*, 461 U.S. at 486) (deferring to the FSIA — the political branches' "most recent such decision" — rather than "presum[ing] that decision inapplicable merely because it postdates the conduct in question"). As such, this Court should "defer to" the plain language of § 1704 of the SCRA, which expressly removes § 1605A(a) as a basis for subject-matter jurisdiction in actions that concern events occurring before the date of the Certification. *See Mark*, 77 F.4th at 896 (holding the SCRA "by its plain terms divests this court of jurisdiction"). Furthermore, Plaintiffs' action does not fit within the single exclusion from § 1704's restoration of Sudan's sovereign immunity because their action is not part of the multidistrict litigation relating to the terrorist attacks on September 11, 2001. *See* SCRA § 1706(c).

Finally, in *Mark*, the D.C. Circuit rejected the plaintiffs' constitutional challenge to the SCRA's jurisdiction-stripping provision. *Mark*, 77 F.4th at 899. The First Amended Complaint here makes no constitutional challenge to the SCRA, but any request by Plaintiffs for leave to file a second amended complaint to assert such a challenge should be denied as futile, given the D.C. Circuit's decision. *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (affirming denial of leave to file a supplemental complaint "as futile [because] proposed claim would not survive a motion to dismiss").

\*   \*   \*

The First Amended Complaint alleges no exception to Sudan's sovereign immunity other than § 1605A(a) and, in any event, none applies. Accordingly, the Court lacks subject-matter jurisdiction over this action, and the First Amended Complaint must be dismissed with prejudice under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER SUDAN

United States courts lack personal jurisdiction over a foreign state unless one of the FSIA's exceptions to sovereign immunity applies and service is proper under 28 U.S.C. § 1608. 28 U.S.C. § 1330(b); *see also Amerada Hess*, 488 U.S. at 435 n.3 (concluding "personal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions for foreign sovereign immunity in §§ 1605-1607 applies" (citing *Verlinden*, 461 U.S. at 485, 489 & n.14)). Because Plaintiffs cannot establish an exception to Sudan's sovereign immunity, the Court lacks personal jurisdiction over Sudan, and the First Amended Complaint must be dismissed with prejudice under Rule 12(b)(2).

## III.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST SUDAN

The First Amended Complaint contends that Plaintiffs are entitled to damages, including punitive damages, under § 1605A(c)'s private right of action and under Israeli and U.S. state law. First Am. Compl. ¶¶ 278-314. As discussed above, § 1704(a)(1)(B) of the SCRA provides that "any . . . private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law," including § 1605A(c), "shall not apply with respect to claims against Sudan, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court." Because no private right of action is available for Plaintiffs' claims against Sudan, Plaintiffs have no basis on which to bring their claims, and the claims must be dismissed for failure to state a claim under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Sudan respectfully requests that the Court dismiss with prejudice the First Amended Complaint against Sudan in its entirety for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Sudan

expressly preserves all its rights, privileges, immunities and defenses, including its defenses on the merits.

September 15, 2023                                    Respectfully submitted,

**WHITE & CASE**

/s/ Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Nicole Erb (D.C. Bar No. 466620)
Claire A. DeLelle (D.C. Bar No. 974945)
Celia A. McLaughlin (D.C. Bar No. 1007891)
701 Thirteenth Street, NW
Washington, D.C. 20005
Telephone:    + 1 202 626 3600
Facsimile:    + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*