## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STUART FORCE, *et al.*,

                    *Plaintiffs*,

          v.                                          Civil Action No. 20-3027 (RDM)

REPUBLIC OF SUDAN,

                    *Defendant*.

## <u>MEMORANDUM OPINION</u>

This case arises from a series of terrorist attacks carried out in Israel between 2014 and 2018.  *See* Dkt. 7 at 22–54 (Compl. ¶¶ 96–277).  Plaintiffs are victims, family members of victims, and the estates of victims of these attacks.  *Id.*  Plaintiffs allege that two terrorist organizations—Hamas and the Palestinian Islamic Jihad ("PIJ")—perpetrated the attacks that caused their injuries.  Plaintiffs commenced this action against the Republic of Sudan, seeking to hold Sudan liable for their injuries in light of Sudan's long-standing support of these two terrorist groups.  *Id.* at 6 (Compl. ¶ 1).  Although foreign sovereigns typically enjoy immunity from suit, Plaintiffs invoke the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), which waives sovereign immunity and creates a private right of action for damages against foreign states that provide "material support or resources" for "act[s] of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking."  28 U.S.C. § 1605A(a)–(c); Dkt. 7 at 54–59 (Compl. ¶¶ 278–314).

Ten days after Plaintiffs filed their complaint, however, the United States and Sudan entered into a historic bilateral Claims Settlement Agreement ("CSA"), espousing and settling most terrorism related claims against Sudan.  To implement the CSA, Congress enacted the

Sudan Claims Resolution Act ("SCRA"), Pub. L. No. 116-260, 134 Stat. 3291 (2020) (codified at 28 U.S.C. § 1605A (note)), which restored Sudan's sovereign immunity in U.S. courts, thereby stripping federal courts of jurisdiction to hear such claims. Relying on this new legislation, Defendant Sudan moves to dismiss Plaintiffs' action for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. Dkt. 15.

For the reasons explained below, the Court will grant Sudan's motion to dismiss for lack of subject matter jurisdiction.

## I.  BACKGROUND

Plaintiffs were injured in or as a result of terrorist attacks carried out by Hamas and the PIJ. Dkt. 7 at 21–54 (Compl. ¶¶ 95–277). Plaintiffs allege that Sudan "provided material support and resources to Hamas and the PIJ," enabling them to perpetrate the attacks. *Id.* at 21 (Compl. ¶ 95). Plaintiffs seek to recover damages for Sudan for its role in these attacks pursuant to the FSIA's exception to sovereign immunity for state sponsors of terrorism. *Id.* at 54–55 (Compl. ¶¶ 278–89). At the time Plaintiffs filed their complaint, the United States had designated Sudan as a state sponsor of terrorism for nearly 30 years, in part due to its support of Hamas and the PIJ. *Id.* at 18–19 (Compl. ¶¶ 81–85).

In 2019, however, the United States and Sudan began negotiating to restore formal diplomatic relations. The following year, the two countries entered into a Claims Settlement Agreement ("CSA"). *See* Claims Settlement Agreement, U.S.-Sudan, Oct. 30, 2020, T.I.A.S. No. 21-209 (entered into force Feb. 9, 2021). The purpose of the CSA was, in part, to "settle[] the claims of the United States of America and, through espousal, those of U.S. nationals" brought against Sudan under the FSIA's state-sponsored terrorism exception for attacks "occurring

outside of the United States of America and prior to the date of execution of this Agreement." *Id.* art. II.

"Espousal" is a legal doctrine that allows a government to adopt its citizens' claims against another government and to resolve them. A sovereign's "absolute power" to espouse its citizens' claims "does not depend on the consent of the private claimholder." *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1523 (D.C. Cir. 1984); *see also Dames & Moore v. Regan*, 453 U.S. 654, 679 (1981). "Once it has espoused a claim, the sovereign has wide-ranging discretion in disposing of it. It may compromise it, seek to enforce it, or waive it entirely." *Asociacion de Reclamantes*, 735 F.2d at 1523. Under the CSA, the United States exercised this authority and "agreed to espouse and terminate all remaining claims against Sudan in exchange for a $335 million settlement payment." *Mark v. Republic of the Sudan*, 77 F.4th 892, 895, 462 (D.C. Cir. 2023) (citing CSA, art. III(2)).

Congress then enacted the Sudan Claims Resolution Act ("SCRA"), which implemented the CSA. In accordance with the CSA, the SCRA restored Sudan's sovereign immunity with respect to terrorism claims under § 1605A(a) of the FSIA. SCRA, Pub. L. No. 116-260, §§ 1701–08, 134 Stat. 1182, 3291–98 (2020) (codified at 28 U.S.C. § 1605A (note)) (providing the FSIA's terrorism exception no longer applies to Sudan). In addition, the SCRA provided that the United States would formally rescind Sudan's designation as a state sponsor of terrorism.

Section 1704(b) of the SCRA provides that this immunity operates retroactively. In particular, as relevant here, Sudan's immunity "shall apply to all conduct and any event occurring before" March 20, 2021, "regardless of whether, or the extent to which, application of [§ 1704(a), which restored Sudan's immunity,] affects any action filed before, on, or after that

3

date."[1]  *Id.* § 1704(a)–(b); *see* Certification Under Section 1704(a)(2) of the Sudan Claims Resolution Act Relating to the Receipt of Funds for Settlement of Claims Against Sudan, 86 Fed. Reg. 19,080 (Apr. 12, 2021).  In other words, the SCRA stripped federal courts of jurisdiction over claims relating to Sudan's prior assistance to terrorist groups.

Following enactment of the legislation, Sudan moved to dismiss Plaintiffs' case for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.  *See* Dkt. 15-1.  Further briefing on Sudan's motion to dismiss was then, at the request of Plaintiffs, Dkt. 23, stayed pending the D.C. Circuit's decision in *Estate of Steinberg by and through Steinberg v. Republic of Sudan*, 2024 WL 718722 (D.C. Cir. Feb. 21, 2024) (per curiam), which addressed a Fifth Amendment challenge to the SCRA's jurisdiction stripping provisions.  On February 21, 2024, the D.C. Circuit issued its decision in *Steinberg* and summarily affirmed the district court, which had rejected the plaintiffs' constitutional challenge to the statute and, accordingly, dismissed the case for lack of subject matter jurisdiction.  *Id.* (citing *Mark*, 77 F.4th at 897–98).  In dismissing *Steinberg*, the D.C. Circuit relied on *Mark v. Republic of the Sudan*, 77 F.4th 892, 897–98 (D.C. Cir. 2023), *cert. denied*, 2024 WL 1839103 (U.S. Apr. 29, 2024).  The plaintiffs in *Mark*, who were also victims of Sudan-sponsored terror attacks, argued that the SCRA "runs afoul of equal protection because it bars their claim while allowing the claims of 'other similarly situated victims of Sudan-sponsored terrorism'" (that is, victims of the September 11 terrorist attacks, *see supra* n.1) to proceed.  *Id.*  They further argued that the statute unconstitutionally "impair[ed] their right to access the courts."  *Id.* at 898.  The D.C. Circuit dismissed the plaintiffs' equal protection argument, concluding that the SCRA was subject to rational basis

---

[1] The only exception carved out from this general rule are the pending claims brought by "victims and family members of the September 11, 2001, terrorist attacks."  SCRA § 1706(a)(2)(A).

review and that it "easily satisfie[d] this standard." *Id.* The court explained that there were numerous "reasonable justifications for the Act," including the United States's goal of fostering relations with Sudan and prioritizing relief for victims of September 11. *Id.* The court then rejected the plaintiffs' second argument, holding that Congress's decision to restore Sudan's sovereign immunity "simply do[es] not implicate the right to access the courts." *Id.* The court noted, moreover, that plaintiffs' argument was "in tension" with the government's absolute power to "espouse the claims of its citizens," which had been exercised since the founding. *Id.*

After the D.C. Circuit issued its opinion in *Steinberg*, this Court lifted the stay on briefing in this case, and Plaintiffs filed an opposition to Sudan's motion to dismiss.[2] Plaintiffs' opposition conceded that "this Court's hands are tied" because *Mark* and *Steinberg* are "binding on this Court as to the issues presented therein." Dkt. 27 at 4. But Plaintiffs also argued that, by espousing Plaintiffs' claims against Sudan, the CSA and SCRA violate the Takings Clause of the Fifth Amendment. In Plaintiffs' view, "the deal with Sudan and the SCRA provisions that purport to take Plaintiff's claims against Sudan by espousal and release them without compensation to Plaintiffs is unconstitutional and cannot be enforced by this Court." *Id.* Sudan filed a reply. Dkt. 28. Sudan's motion to dismiss is now ripe for resolution.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) sets forth the defense of lack of subject-matter jurisdiction. Subject matter jurisdiction is "an absolute prerequisite for the continuance of an

---

[2] The United States filed a notice of potential participation in this action, reiterating its position that the SCRA stripped federal courts of jurisdiction over terrorism claims against Sudan. Dkt. 22 at 1–2. The United States stated that it would file a notice regarding its potential participation within 30 days after the parties concluded their briefing, depending on whether Plaintiffs raised any constitutional challenges to the statute. *Id.* Ultimately, the United States did not file any notice.

action." *Dentons U.S. LLP v. The Republic of Guinea*, 134 F. Supp. 3d 5, 7 (D.D.C. 2015). "[W]hen [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514 (1869); Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The SCRA by its plain terms strips the Court of subject matter jurisdiction over Plaintiffs' claims, *Mark*, 77 F.4th at 896, but to the extent Plaintiffs raise a constitutional challenge to the SCRA's jurisdiction stripping provision, the Court may consider whether this jurisdictional carveout is "[w]ithin constitutional bounds," *Bowles v. Russell*, 551 U.S. 205, 212 (2007). "So long as Congress does not violate other constitutional provisions, its 'control over the jurisdiction of the federal courts' is 'plenary.'" *Patchak v. Zinke*, 583 U.S. 244, 252 (2018) (plurality) (quoting *Trainmen v. Toledo, P. & W.R. Co.*, 321 U.S. 50, 63–64 (1944)). In the context of suits against foreign sovereigns, moreover, Congress's authority to prescribe the jurisdiction of the federal courts demands unique solicitude because such suits implicate "foreign affairs, a domain in which the controlling role of the political branches is both necessary and proper." *Bank Markazi v. Peterson*, 578 U.S. 212, 234 (2016); *Dentons*, 134 F. Supp. 3d at 7 (examining subject matter jurisdiction in suit against foreign sovereign "with more scrutiny"). "In furtherance of their authority over the Nation's foreign relations," Congress and the President have "time and again" exercised "control over claims against foreign states," including by suspending or disposing of those cases, and such measures "have never been rejected as invasions upon the Article III judicial power." *Bank Markazi*, 578 U.S. at 235. Accordingly, so long as the SCRA's jurisdiction stripping provision is valid, the Court must dismiss Plaintiffs' claims.

### III.  ANALYSIS

At the outset, the Court notes that the nature of Plaintiffs' challenge is unclear.  Plaintiffs appear to acknowledge that the jurisdiction stripping provision of the SCRA is valid and that the Court must dismiss their case.  As Plaintiff concede in their brief, "Plaintiffs recognize that this Court's hands are tied and that it must follow *Mark* and *Steinberg*."  Dkt. 27 at 4.  Yet Plaintiffs argue that the United States's espousal of their pending claims in this lawsuit was unconstitutional.  In Plaintiffs' view, the United States violated the Takings Clause, which prohibits the government from taking private property "without just compensation."  U.S. Const. amend. V.  Plaintiffs assert that, because the SCRA now prevents them from seeking a remedy in federal court against Sudan, they will be "paid nothing" for their pending claims, leaving them "with no remedy other than to sue the United States for damages under the Takings Clause, which is exactly what Plaintiffs will do if this case is dismissed."  Dkt. 27 at 4.

As a general matter, Congress may "enact[] new laws that apply to pending civil cases," even where those statutes "strip jurisdiction."  *Patchak*, 583 U.S. at 257–58 (plurality).  But a jurisdiction stripping statute may violate the Constitution if the statute is merely a means to achieve unconstitutional ends.  *Id.* at 253 n.3; *see, e.g.*, *United States v. Klein*, 80 U.S. (13 Wall.) 128, 143 (1872).  The plaintiffs in *Mark* advanced this theory, arguing that the SCRA's jurisdiction stripping provision violated the Equal Protection Clause by arbitrarily allowing some claims to proceed, but not theirs.  One could imagine such a statute in the context of the Takings Clause.  If, for example, Congress enacted a law that purported to take an individual's property with no compensation, and then divested federal courts of jurisdiction over all claims relating to the property, that statute might run afoul of the Takings Clause.  *See* Tr. Oral Argument at 35–37, *Patchak v. Zinke*, 583 U.S. 244 (2018).

Plaintiffs, however, fail to assert such a challenge here.  As an initial matter, it is unlikely

that the SCRA effected a taking of Plaintiffs' property.  In order to prevail on a Takings Clause

claim, Plaintiffs "must first establish that [they] had a protectable property interest cognizable

under the Fifth Amendment." *Yancey v. District of Columbia*, 991 F. Supp. 2d 171, 179 (D.D.C.

2013) (citation omitted).  Plaintiffs assert a property interest in their pending claims in this

lawsuit, but Plaintiffs lack a property interest in their claims prior to "the entry of final

judgment." *Jung v. Ass'n. of Am. Med. Colls.*, 339 F. Supp. 2d 26, 42–43 (D.D.C. 2004).  It is

well-settled that Congress may "extinguish[]" pending claims through "retroactive economic

legislation," so long as the law is supported by a rational basis, as the SCRA is here.[3]  *Adams v.*

*Hinchman*, 154 F.3d 420, 424 (D.C. Cir. 1998); *see Mark*, 77 F.4th at 896 (upholding SCRA on

rational basis review).  This principle applies with particular force in the realm of foreign affairs,

where "it remains Congress' prerogative to alter a foreign state's immunity and to render the

alteration dispositive of judicial proceedings in progress." *Bank Markazi*, 578 U.S. at 236.

Even if the Court were to conclude that the SCRA effected a taking of Plaintiffs' property,

Plaintiffs would face an additional (and insurmountable) hurdle.  Because the SCRA constitutes a

valid exercise of congressional power, *Mark*, 77 F.4th at 896–98, the remedy for any potential

taking would not be for the Court to hold the SCRA unconstitutional.  *See Am. Int'l Grp., Inc. v.*

*Islamic Republic of Iran*, 657 F.2d 430, 446–49 (D.C. Cir. 1981); *id.* at 451 n.3 (McGowan, J.,

concurring) (explaining that invalidating the government's alleged taking would be warranted

---

[3] Plaintiffs do not distinguish between the CSA and the SCRA, but as *Mark* explained, the CSA "espouses their claims and therefore 'simply effected a change in the substantive law governing the lawsuit,' but did not affect [the court's] jurisdiction." *Mark*, 77 F.4th at 897 n.3 (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 685 (1981)).  Thus, because the Court "lack[s] jurisdiction over [Plaintiffs'] claims," the Court will not "consider [Plaintiffs'] constitutional arguments as they pertain to the substance of the [CSA]." *Id.*

only if the court found that the government acted *ultra vires*).  Instead, the proper remedy would be just compensation, and this Court has no power to order that relief.  "A claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *Horne v. Dep't of Agric.*, 569 U.S. 513, 527 (2013)  (citation and alteration omitted).  Thus, to the extent Plaintiffs mean to assert that their property has been taken, they have done so before the wrong tribunal and against the wrong defendant.  *See Dames & Moore*, 453 U.S. at 689 & n.14.  Any remedy would lie in a suit against the United States in the Court of Federal Claims—not in this Court, and not against Sudan.[4]

## CONCLUSION

In light of the binding authority holding that the SCRA ousts the courts of jurisdiction over state-sponsored terrorism claims against Sudan, *see Mark*, 77 F.4th at 896, the Court will grant Sudan's motion to dismiss without prejudice.

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 19, 2024

---

[4] Because the Court concludes that it lacks subject matter jurisdiction, the Court need not reach Sudan's alternative arguments for dismissal.  *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)).